NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MIGUEL A. COSME,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Civil Action No.: 18-cv-01327

**OPINION**

**CECCHI, District Judge.**

Miguel A. Cosme ("Plaintiff") appeals a decision by the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). ECF No. 1.  No oral argument was heard. Fed. R. Civ. P. 78.  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff, an adult male, was born on January 10, 1972. Tr.[1] at 34.  Plaintiff has an eleventh-grade education and previously worked as a forklift driver and as a laborer assembling windows in a factory. Id. at 46–49.  In April 2014, Plaintiff experienced chest pains, and his doctors forbade him to lift more than ten pounds due to his condition. Id. at 49.  He subsequently underwent open heart surgery in May 2014 to correct congestion of his coronary arteries. Id. at 33, 49–50.  Plaintiff testified that after his surgery he continued to experience chest and back pain. Id. at 50.  He also reported only being able to:  sit in a chair for ten to fifteen minutes at a time, stand in one place for about fifteen minutes, and walk around for ten to fifteen minutes before he must stop as his legs

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 8.

and feet get swollen. Id. at 50–51.  Plaintiff testified that he must rest for about fifteen minutes before the swelling subsides and he can walk again. Id. at 51.  Plaintiff also stated that he cannot lift more than ten pounds without pain or do household chores, and that his chest hurts when he reaches straight out or over his head. Id. at 51–52.  Plaintiff testified that he suffers from anxiety and depression. Id. at 52.  He stated that he hears voices calling his name, that he is nervous around people, and that he rarely leaves his home as a result. Id.

### B.        Procedural History

On June 5, 2014, Plaintiff applied for DIB under Title II of the SSA, and on June 6, 2014, he applied for SSI under Title XVI, alleging an onset date of May 5, 2014 in both. Id. at 28.  The applications were denied initially and on reconsideration. Id.  Plaintiff requested a hearing before an ALJ which was held on August 25, 2016. Id. at 42–59.  On October 20, 2016, the ALJ issued an opinion concluding that Plaintiff was not disabled under the SSA at any point from May 5, 2014 up to present. Id. at 28–36.  Plaintiff requested review by the Appeals Council which was denied on November 27, 2017. Id. at 1.  He then filed this action for judicial review of the ALJ decision.

## II.    LEGAL STANDARD

### A.        Standard of Review

District courts have jurisdiction to review final decisions by the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3).  The Court gives deference to administrative findings and does not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see* 42 U.S.C. § 405(g).  Still, the Court must examine the record as a whole to determine whether the ALJ's findings were supported by substantial evidence. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" means "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (citation omitted); *see Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)) ("In an adequately developed factual record substantial evidence may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"). Thus, the Court will not disrupt an ALJ's decision merely because it would have reached a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B.      Determining Disability

To be eligible for SSA benefits, an individual must meet the definition of "disabled," that is, "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). The inquiry for disability is whether the individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 1382c(a)(3)(B), 423(d)(2)(A); *see also id.* §§ 423(d)(3), 1382c(a)(3)(D) (defining "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques"). Disability determinations must be individualized and based on evidence cited at a hearing. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

### C.      Sequential Evaluation Process

The Social Security Administration uses a five-step sequential evaluation process to decide disability claims. 20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ learns whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262.  Second, if he is not, the ALJ ascertains whether the claimant has a severe impairment that significantly limits his ability to work. *Id.*  Third, if he has an impairment, the ALJ considers if, based on the medical evidence, his impairment meets the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), which are impairments that result in a presumption of disability. *Id.*  If his impairment is not listed, the ALJ determines how much residual functional capacity ("RFC") the claimant has despite his impairment. *Id.* at 262–63.  Fourth, the ALJ considers if the claimant has enough RFC to perform his past work. *Id.*  Fifth, if not, the ALJ determines whether there exists other work in the national economy the claimant can perform. *Id.*  The ALJ proceeds through the steps until it is determined whether the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one, two, and four. *Sykes*, 228 F.3d at 263 & n.2.  Neither party bears the burden of proof at step three, and the Commissioner bears the burden of proof at step five. *Id.*

## III.    DISCUSSION

### A.      Summary of the ALJ's Decision

At step one, the ALJ found that Plaintiff met the SSA's insured status requirements through September 30, 2015 and that he had not engaged in substantial gainful activity since the alleged onset date of May 5, 2014. Tr. at 30.  At step two, the ALJ found that Plaintiff had three severe impairments:  coronary artery disease with status post coronary artery bypass graft, depression, and anxiety. Id.  At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed impairment. Id. at 30–31. The ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined by SSA regulations but was limited to simple and repetitive work involving no contact with the public and minimal contact with coworkers and supervisors. Id. at 32. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Id. at 34. At step five, the ALJ found that, considering his age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. Id. at 35. Thus, the ALJ concluded that Plaintiff was not disabled under the SSA at any time from the alleged onset date to the date of decision. Id.

**B.     Analysis**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence and must be vacated. The Court will address each of Plaintiff's arguments in turn. Further, as Plaintiff does not challenge the ALJ's conclusions at steps one, two, or four, the Court will not address them.

### 1.     The ALJ's Listings Analysis

#### a.     Cardiovascular Impairment

Plaintiff argues that the ALJ's finding at step three regarding his cardiovascular impairment was so deficient that it prevents the opportunity for meaningful judicial review. ECF No. 13 ("Pl. Br.") at 12–15. Specifically, Plaintiff asserts that the ALJ "did not share his analysis of the cardiac listing nor list the deficiencies he found and merely stated that plaintiff's impairment failed to meet the listing." Id. at 15. The Court will affirm the step three determination as it finds that the ALJ's analysis was based on substantial evidence and is sufficient to provide judicial review.

Plaintiff argues that the ALJ's Listing analysis was deficient under Third Circuit law. Id. at 13 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112 (3d Cir. 2000); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009)). In *Burnett*, the court vacated and remanded an ALJ decision

as its step three analysis consisted only of one conclusory statement that the plaintiff's condition "failed to equal the level of severity of any disabling condition contained in [the Listings]." 220 F.3d at 119.  However, the rule from *Burnett* has been clarified by subsequent case law:  an ALJ is not required to adhere to a particular format in conducting a step three analysis, but instead must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Wisniewski v. Comm'r of Soc. Sec.*, 210 F. App'x 177, 180 (3d Cir. 2006) ("We have never required an administrative law judge to identify or analyze the most relevant listing.").  Instead, the district court looks at the ALJ's decision as a whole and will find that the ALJ has discharged his responsibilities where the ALJ reviewed medical records and discussed the evidence pertaining to the plaintiff's health condition. *Ochs v. Comm'r of Soc. Sec.*, 187 F. App'x 186, 189 (3d Cir. 2006) (affirming step three Listings analysis where ALJ thoroughly reviewed plaintiff's condition and medical records and "discussed the evidence pertaining to" his back injury).

Here, the ALJ considered the section 4.00 Listings for cardiovascular impairments and thoroughly reviewed the medical evidence relevant to Plaintiff's cardiovascular injury. Tr. at 31–33.  The ALJ considered Plaintiff's cardiovascular disease, coronary artery bypass surgery, and the post-surgical progress of his illness. Id. at 33.  In particular, the ALJ noted an exam in August 2014 by Rambhai C. Patel, M.D. ("Dr. Patel") which revealed no evidence of heart failure and a normal sinus rhythm, an exam in September 2014 showing normal S1 and S2 sounds with regular rate and rhythm, and Plaintiff's April 2016 nuclear stress test, which showed "a normal ejection fraction of 63% with a normal resting ECG." Id.  Thus, the ALJ's review of the evidence shows sufficient development of the medical record as it pertains to Plaintiff's cardiovascular impairment,

and the Court finds that there was substantial evidence to support the ALJ's conclusion that the available medical evidence did not satisfy the section 4.00 listing criteria.

      b.  <u>Obesity</u>

Plaintiff argues that the ALJ's step three analysis was also deficient as it failed to consider Plaintiff's obesity pursuant Social Security Ruling ("SSR") 02-1p. Pl. Br. at 15–16. The Court finds, however, that the ALJ was under no obligation to further consider Plaintiff's obesity here.

In the Third Circuit, once an ALJ identifies obesity as a severe impairment at step two, the ALJ must consider it individually and in combination with the claimant's other impairments at step three and at each subsequent step. *Diaz*, 577 F.3d at 503. The ALJ must discuss the evidence of the claimant's obesity and must sufficiently explain the reasoning to "enable meaningful judicial review." *Id.* at 504. By contrast, where neither the claimant nor the ALJ has identified obesity as a severe impairment, the ALJ is under no such obligation, and thus, remand is not required where an ALJ fails to discuss the alleged obesity, as further discussion of it "would not affect the outcome of the case." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (denying remand as neither claimant nor ALJ identified obesity as an impairment and claimant did not explain how further consideration on remand would change the ALJ's disability determination).

Here, Plaintiff did not list obesity in his disability report. Tr. at 231 (listing only "high blood pressure, high cholesterol, heart condition" when asked to "[l]ist all of the physical or mental conditions . . . that limit your ability to work"). Plaintiff also did not mention obesity at the hearing before the ALJ. Id. at 44–56. Furthermore, Plaintiff has not explained how further consideration of his obesity would impact the ALJ's analysis of Plaintiff's impairments. *Rutherford*, 399 F.3d at 553; *see also Santini v. Comm'r of Soc. Sec.*, No. 08-5348, 2009 WL 3380319, at *6 (D.N.J. Oct. 15, 2009), *aff'd*, 413 F. App'x 517 (3d Cir. 2011) ("The problem for Plaintiff . . . is that she has

pointed to no medical evidence of record that her obesity has caused a substantial or relevant work-related limitation of her functioning.  Absent that, the ALJ could not have come to any other conclusion at step four.").  As Plaintiff has not explained how his obesity impacts his functioning or ability to work or identified medical evidence of the same, further analysis of his obesity would not affect the outcome of this case, and the Court will not remand.

Thus, the Court finds the ALJ's conclusion, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed impairment, rational and supported by substantial evidence.  Accordingly, the Court will not disturb this finding.

## 2.  Medical Opinion Evidence

Plaintiff argues that the ALJ discounted the opinions[2] of Marc Fisk, DO ("Dr. Fisk") and Olayinka M. Aramide, MSN, APN-BC ("Dr. Aramide"[3]) in the RFC analysis. Pl. Br. at 17.  The Court finds that the ALJ properly analyzed the medical opinion evidence and will not remand.

### a.  Dr. Fisk

On October 20, 2014, Dr. Fisk completed a Residual Functional Capacity Questionnaire, and opined on various aspects of Plaintiff's capacity. Tr. at 376–81.  The ALJ considered it and afforded it weight. Id. at 33.  In the questionnaire, Dr. Fisk stated that he had treated Plaintiff since April 27, 2014, and opined that Plaintiff did not have marked limitation of physical activity, was "[c]apable of low stress jobs," and that Plaintiff's "functional limitations [were] minimal." Id. at

---

[2] Plaintiff also claims the ALJ "negate[d]" the reports of Dr. Patel and Dr. Alexander Iofin. Pl. Br. at 16.  The record indicates, however, that the ALJ considered both reports. Tr. at 33–34.  Further, neither physician appears to have opined on Plaintiff's RFC.

[3] While the record and parties refer to Olayinka M. Aramide as "Dr. Aramide," she is in fact an Advanced Practice Nurse ("APN-BC") with a Master's of Science in Nursing ("MSN"). *See* Tr. at 382.

376–78.  Dr. Fisk noted that Plaintiff could sit and stand for more than two hours at a time during an eight-hour workday.[4] Id. at 379.  Further, Dr. Fisk stated that Plaintiff's impairments had not lasted and could not be expected to last at least twelve months. Id. at 378.  Thus, Dr. Fisk's opinion supports the ALJ's determination that Plaintiff was not disabled, and the ALJ was correct in affording it weight.  As Plaintiff has neither explained, nor is it clear how, Dr. Fisk's opinion would produce a different outcome on remand if accorded additional weight, the Court will not remand.

### b.   Dr. Aramide

On August 15, 2016, Dr. Aramide completed a Mental Impairment Residual Capacity Evaluation Questionnaire, opining on Plaintiff's mental health and RFC. Id. at 417–18.   Dr. Aramide noted that Plaintiff had poor memory, panic attacks, anhedonia, decreased energy, and difficulty thinking or concentrating. Id. at 417.  She also opined that Plaintiff would have difficulty working at a regular job on a sustained basis and that, on average, he would be absent from work more than three times per month. Id. at 418.  Dr. Aramide concluded that Plaintiff's "restriction of activities of daily living" was slight, that his "poor social functioning" was moderate, and that his "deficiencies of concentration, etc." and "episodes of decompensation" were both marked. Id.

The ALJ considered Dr. Aramide's opinion and gave it little weight because it was not supported by any clinical findings. Id. at 34.  Plaintiff argues that the report was in fact supported by treatment notes that the ALJ could have "easily" requested pursuant to his duty to develop the record. Pl. Br. at 17–18.[5]  Plaintiff asserts that the Court must remand to the ALJ to further develop the record. Id. at 18.  However, remand is improper as the Court finds that, even in his supplemental

---

[4] Plaintiff's assertion that Dr. Fisk reported that Plaintiff could "sit for not more than two hours" (Pl. Br. at 13), misreads the record as Dr. Fisk clearly circled the questionnaire to indicate that Plaintiff could sit for "more than" two hours (Tr. at 379).
[5] The parties submitted supplemental briefing on this issue. *See* ECF Nos. 17–19.

briefing, Plaintiff has not shown the existence of other evidence, proffered the allegedly missing notes to this Court, or otherwise demonstrated prejudice due to an omission from the ALJ's record.

At least one court in this Circuit has required a plaintiff to show clear evidence of prejudice to remand for an ALJ's failure to adequately develop the record.  In *Herring v. Colvin*, the plaintiff, who was not represented by counsel at her ALJ hearing, argued that "the ALJ did not update [her] medical records, did not encourage [her] to obtain and present recent medical records, did not 'explain to [her] that she also had a right to ask questions of the VE,' and did not invite [her] to ask questions of the VE." 181 F. Supp. 3d 258, 268 (M.D. Pa. 2014).  There, the court explained that while 42 U.S.C. § 405(g) allows a district court to order that new evidence be brought before the Commissioner, the evidence must be material ("sentence six").  *Id.* at 272.  The court determined that a showing of prejudice was required for a remand based on failure to develop the record because "allowing a claimant to secure a remand for failing to develop the record without any showing of prejudice would allow a back door around the materiality requirement of a sentence six remand." *Id.*  Thus, the court held that it would not remand for an ALJ's failure to adequately develop the record absent "clear evidence of prejudice." *Id.* at 273; *see also United States ex rel. Doggett v. Yeager*, 472 F.2d 229, 238 (3d Cir. 1973) (noting that courts require a showing of identifiable prejudice for due process deprivation claims).

Here, unlike in *Herring*, Plaintiff was represented by counsel before the ALJ. Tr. at 44. Thus, the ALJ's duty to develop the record was less exacting than for a *pro se* claimant. *Cf. Reefer*, 326 F.3d at 380 (noting ALJ's heightened duty when claimant is at the hearing without counsel). Moreover, Plaintiff has not provided a description of the allegedly missing evidence in detail or proffered said evidence to this Court.  Instead, Plaintiff merely asserts that treatment notes exist and that the notes support Dr. Aramide's opinion. Pl. Br. at 17.  Yet without more, this is not clear

evidence of prejudice.  Accordingly, the Court will not remand for consideration of additional evidence that is alleged to exist yet has not been proffered to this Court and whose absence from the record before the ALJ has not been shown to have clearly prejudiced Plaintiff.

### 3.  Plaintiff's Credibility

Plaintiff argues that the ALJ inappropriately discounted Plaintiff's testimony about his pain and the functionally limiting effects of his symptoms. Id. at 18–19.  A claimant's statements about his pain or symptoms cannot alone establish that he is disabled. 20 C.F.R. § 404.1529(a).  Instead, to evaluate credibility, an ALJ considers the extent to which the self-reported symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ also considers factors such as the claimant's treatment history and his daily activities. *Id.* § 404.1529(c)(3).  If the ALJ finds the claimant's subjective complaints inconsistent with the objective medical evidence, the ALJ may discount them.  *Id.* § 404.1529(c)(4).  Thus, "it is particularly inappropriate to second guess such credibility determinations" under the deferential substantial evidence standard of review applied to ALJ disability determinations. *Vanord v. Colvin*, No. 13-27, 2014 WL 585413, at *2 (W.D. Pa. Feb. 14, 2014).

Here, the ALJ duly considered Plaintiff's subjective complaints and hearing testimony. Tr. at 32–33.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. Id. at 33.  However, the ALJ also found that Plaintiff's statements on the intensity, persistence, and limiting effects of his symptoms, were inconsistent with the medical evidence and other evidence. Id.  In reaching this conclusion, the ALJ considered the medical record in detail and noted several findings contradicting Plaintiff's claim that he was completely disabled. Id. at 33–34.  For example, the ALJ cited Dr. Patel's relatively mild findings from an exam in August 2014 which revealed no evidence of heart failure, no motor defects, and

11

a normal gait. Id. at 33.  The ALJ also cited the opinion of Dr. Fisk that Plaintiff was capable of work and suffered only minor and transient impairment. Id.  Based on this record, the Court disagrees with Plaintiff's claim that the ALJ's finding regarding Plaintiff's subjective complaints was based on "mere speculation."  Instead, the Court finds that the reasons provided by the ALJ, for not giving more credit to Plaintiff's complaints, are legitimate, objective, and supported by substantial evidence.  Thus, the Court will not remand to consider Plaintiff's subjective complaints.

### 4.  Plaintiff's RFC

Plaintiff argues that the RFC determination was "merely conclusory and not based on the medical evidence." Pl. Br. at 20.  Specifically, Plaintiff asserts that the ALJ failed to include a "function-by-function" assessment of his capacity.  Id. at 20–21.  Plaintiff also argues that the ALJ incorrectly determined that Plaintiff could communicate in English and that the ALJ should have considered his inability to speak or understand English as a limitation. Id. at 21–22.

To satisfy the requirements of SSR 96-8p, an ALJ is required to cite the evidence that was relied on in reaching the conclusion. *Pearson v. Barnhart*, 380 F. Supp. 2d. 496, 506 (D.N.J. 2005). However, "so long as the ALJ's RFC determination is supported by substantial evidence in the record," the ALJ is not required to conduct a function-by-function analysis at step four. *Tenorio v. Berryhill*, No. 16-3760, 2017 WL 4548057, at *4 (E.D. Pa. Oct. 11, 2017) (citation omitted).

Nevertheless here, the ALJ did perform a function-by-function analysis, which he did properly as he discussed Plaintiff's physical and mental abilities. Tr. at 32–34.  Specifically, the ALJ listed and considered Plaintiff's functional limitations and the relevant testimony and evidence for each.  The ALJ explained the evidence he relied on in making his determination and the weight accorded to the evidence.  Thus, the Court finds that the requirements of SSR 96-8p adequately met.

Moreover, the Court disagrees with Plaintiff's claim that the ALJ erred in finding that Plaintiff could communicate in English.  The ALJ's finding was based on Plaintiff's testimony that he spoke and understood a little English, the fact that Plaintiff reported in his application that he could read and understand English, and the ALJ's observation that Plaintiff corrected the interpreter's translation at one point during the hearing, notwithstanding any evidence to the contrary. Id. at 34; *see, e.g.*, *Barik v. Berryhill*, No. 18-9287, 2019 WL 5303983, at *2 (D.N.J. Oct. 21, 2019) (finding that "[w]hile other evidence may support a contrary conclusion, there [wa]s undeniably 'substantial evidence' that Plaintiff could communicate in English," and accordingly, although plaintiff had "some difficulty speaking and understanding English completely without assistance," the ALJ did not err in failing to explicitly analyze the plaintiff's limited language ability); *Arevalo v. Comm'r of Soc. Sec.*, No. 18-7675, 2019 WL 2636579, at *5–6 (D.N.J. June 27, 2019) (noting that under 20 C.F.R. Part 404, § 201, the ability to communicate in English is least significant for unskilled labor, and concluding that the plaintiff's challenge to the ALJ's decision was a mere "disagreement rather than a lack of record evidence to support [the] decision," and was insufficient to overturn the ALJ's decision).  The Court therefore concludes that the ALJ's finding as to Plaintiff's ability to communicate in English was based on substantial evidence and that as a result, the questions posed to the VE were not deficient.

IV.    **CONCLUSION**

For the reasons set forth above, the opinion of the ALJ is affirmed.  An appropriate Order accompanies this Opinion.

DATED:  April 30, 2020

Claire C. Cecchi, U.S.D.J.